Judith J. JAMISON et al.

v.

BUTCHER & SHERRERD and
Howard Butcher, III.

Civ. A. No. 70–2936.

United States District Court,
E. D. Pennsylvania.

Oct. 16, 1975.

Allen J. Levin, Goodis, Greenfield, Henry, Shaiman & Levin, Philadelphia, Pa., for plaintiffs.

Thomas R. White, Jr., Edward C. Mengel, Jr., White & Williams, Philadelphia, Pa., for defendants.

Carl H. Hanzelik, Philadelphia, Pa., for objector David Finkelstein.

Cletus P. Lyman, Lyman & Ash, Philadelphia, Pa., for objector Katherine Walsh.

Robert D. Ferguson, Tucker, Arensberg & Ferguson, Pittsburgh, Pa., for objector Pittsburgh National Bank.

## MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

In this class action, plaintiffs seek recompense for the substantial losses suffered in the sudden depreciation of value

of Penn Central Company securities in the spring of 1970. Defendant Butcher & Sherrerd is a stockbroker-dealer; defendant Howard Butcher, III is a partner of Butcher & Sherrerd. The complaint alleges that during the approximate period of March 30, 1970 to May 15, 1970 defendants sold Penn Central stock held by themselves, their relatives, and selected customers on the basis of non-public information concerning the deteriorating financial condition of Penn Central. Plaintiffs, who allegedly purchased Penn Central stock from defendants but were not told to sell, claim that defendants violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b–5 promulgated by the Securities and Exchange Commission, and that defendants breached their fiduciary duty by failing to advise plaintiffs of this inside information. Pursuant to rule 23(c)(1) of the Federal Rules of Civil Procedure, we certified plaintiffs as representatives of a class consisting of all persons who purchased Penn Central Company stock through defendants before May 11, 1970 and who continued to hold such stock on May 11, 1970.

Plaintiffs and defendants have entered into an agreement to settle this action. Notice of the proposed settlement has been published and a hearing on objections to the settlement has been held. We have considered the objections and the responses to the objections carefully and have concluded that we cannot approve the settlement.

We begin by noting that the Securities and Exchange Commission brought its own action against defendants based on similar allegations. In settlement of that action, defendants agreed to the entry of findings of willful violations of the securities laws. Defendants further agreed to establish an escrow fund in the amount of $350,000 to ameliorate the losses of its customers. Under the terms of the SEC order, the instant action was contemplated as the medium for distributing the escrow fund. The settlement agreement between the SEC and Butcher & Sherrerd further specifies that the fund is to be distributed regardless of the outcome of the *Jamison* action:

> "Should the action result in a settlement or verdict for the plaintiffs in an amount less than the Fund, respondents nevertheless agree to distribute the Fund, less any such settlement or verdict * * *. If the civil action should result in a settlement or verdict for the plaintiffs in excess of the Fund, respondents will, after judgment is finally entered, pay the balance of the claimants any amount in excess of the Fund which is finally determined to be due and owing as a matter of law and fact. If a verdict or judgment is rendered in favor of respondents, they will nevertheless distribute the Fund to registrant's customers in accordance with the above procedure."

The proposed settlement under consideration here provides that defendants will distribute the $350,000 escrow fund established by the SEC order to members of the *Jamison* class. In addition, defendants have agreed to pay $50,000 in attorneys' fees to the attorneys of the class representatives.

There can be no doubt that a court should disapprove a proposed settlement only with considerable circumspection. The settlement of litigation on terms agreeable to all parties is one of the most important tasks we undertake. *See Bok v. Ackerman,* 309 F.Supp. 710 (E.D.Pa.1970). Our judicial system would be severely crippled if courts refused to allow compromise of actions outside the courtroom. In addition, it cannot be disputed that a court should refrain from merely substituting its own judgment of the merits of a settlement for that of counsel intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses. *See e. g., Purcell v. Keane,* 54 F.R.D. 455 (E.D.Pa.1972).

 Yet balanced against this reluctance to interfere with a proposed settlement is our duty to ensure that the interests of a class are reflected fairly and adequately in the decree. This duty is an integral, though implicit, part of the rule 23(e) command that "a class action shall not be dismissed or compromised without the approval of the court." Furthermore, the burden is on the proponents of a settlement to persuade us that it is fair and reasonable. *Norman v. McKee*, 290 F.Supp. 29 (N.D.Cal.1968), *aff'd.* 431 F.2d 769 (C.A. 9, 1970).

We have not been so persuaded here; we cannot say that this settlement adequately compensates the class members for the release of their claims against defendants. The class members here will receive nothing beyond the amount to which they are already entitled under the SEC settlement. They will receive the escrow fund regardless of the outcome of this litigation. Thus, they are releasing their claims without consideration.

Squarely on point is *Norman v. McKee*, *supra*. In that case, investors in an insurance securities trust fund alleged, *inter alia*, that defendants had improperly charged the fund with brokerage commissions. One of the provisions of the proposed settlement in *Norman* was that the defendants would repay the amounts charged as brokerage commissions. However, the court noted that defendants were already under an obligation to repay under a previous SEC order. Therefore, the court concluded, the defendants had provided no consideration for settlement of the litigation.

 Counsel for the class representatives seeks to avoid the application of *Norman* to the instant case on several bases. First, it is argued that we must consider the likelihood of success on the merits should the litigation proceed to trial. We concur in this statement of the standard to be applied in considering a proposed settlement. *See, e. g., United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*, 447 F.2d 647 (C.A. 7, 1971); *Purcell v. Keane, supra.* Counsel argues that while there was a substantial likelihood of success in *Norman*, here the chance of prevailing is slim. Indeed, counsel for the plaintiffs devotes five pages of his response to objections to the settlement to arguing the weakness of his own clients' claim. Counsel points out that section 10(b) of the Securities Exchange Act of 1934 and rule 10b–5 concern fraud "in connection with the purchase or sale" of securities and that the complaint in this case merely alleges that the plaintiffs are "holders." It has been conclusively determined that holders of securities cannot prevail under the securities laws. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (C.A. 2), *cert denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).[1]

We need not decide whether or not the complaint sufficiently alleges activities "in connection with the purchase or sale of securities" so as to avoid *Blue Chip*'s application. For it is clear that the pendent state claim for breach of fiduciary duty is at least substantial and deserves some consideration for its release. Even if the federal claim has no merit, the class will receive $350,000 for it under the SEC order. Therefore, if we were to approve this settlement, plain-

---

1. So persuasive were plaintiffs' arguments that we raised the question with all parties as to whether we had subject-matter jurisdiction in this action. We are now convinced that jurisdiction does properly lie in this court under 15 U.S.C. § 78aa and 28 U.S.C. § 1331. If *Blue Chip* does indeed bar plaintiffs' claim, a question on which we express no opinion, then the complaint is dismissable under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. However, such a dismissal calls for judgment on the merits after the court has assumed jurisdiction and is not properly raised *sua sponte*.

tiffs will be uncompensated for their state claim.

██ Counsel also argues that in *Norman* the SEC actively opposed the settlement while here the Commission has not suggested that we disapprove the settlement. We do not agree that the posture which the SEC takes is a relevant factor for consideration. As discussed above, we are obliged to satisfy ourselves that the settlement is fair and adequate. Furthermore, we do not dispute the SEC's assertion that "the distribution of the fund to members of the class in the *Jamison* action would substantially meet the intent and goals reflected in the Commission's order."[2] We feel, however, that we have a duty to ensure not only that the Commission's order is satisfactorily effectuated in this litigation but that the class receives adequate compensation for the release of its claims.

Counsel for the class argues that there is consideration for the release of claims against defendants because the class in the *Jamison* action differs somewhat from the group of "customers" sought to be compensated by the SEC order. We are not certain to what extent the two classes differ since the SEC class is not precisely defined. We do know, for example, that the SEC order protects those customers who were advised to sell but not given adequate reasons for the recommendation, while they are not included in the class here. Also, the SEC order allows recovery by those persons who purchased Penn Central stock from defendants after May 11, 1970 and still held stock on June 19, 1970, while the present action excludes all those who bought after May 11, 1970. It is, therefore, true that members of the *Jamison* class may be entitled to a somewhat greater amount in this settlement since the SEC order protects a greater number of customers.

██ However, the difference in the classes is of no avail to the proponents of this settlement. If, indeed, the classes vary substantially, and if we were to approve the proposed settlement, we would feel compelled to change the class in this action to conform with that which is to be benefited by the SEC order. *See* F.R.Civ.P. 23(c)(1). Otherwise, we would be depriving persons deemed worthy of protection and compensation by the SEC and included in the ambit of its order. We would therefore have to modify the class in order to effectuate the purposes of the SEC order. We feel justified in considering those purposes since the notice of settlement in this action brings the SEC fund before us for examination. If, on the other hand, there are only "slight inconsistencies and deviations in the constituency of the class in the *Jamison* action when compared to the literal terms of the Commission's order",[3] then we are confident in concluding that there is no genuine consideration for this settlement.

Finally, it might be argued that the class would benefit from this settlement because defendants have agreed to pay $50,000 to plaintiffs' attorneys in addition to the payment of the SEC escrow fund. Thus, the class is assured that the entire fund will be available for distribution without being diminished by the award of attorneys' fees. However, the fact remains that the class is receiving nothing beyond that to which it is entitled under the SEC order. Certainly if this case were to proceed to trial and defendants were to prevail, counsel for the class would be entitled to no fee. In that situation, the class would still receive the $350,000 fund established by the SEC order. Even if plaintiffs prevailed at trial and recovered more than $350,000, any counsel fee would be awarded only on the excess, and plain-

2. Letter to the court from Paul Gonson, Associate General Counsel for the SEC, May 23, 1975.

3. *Id.*

tiffs would still receive at least $350,000 undiminished by attorneys' fees.

In addition, we join the *Norman* court in admonishing counsel that it is inappropriate for a proposed settlement to provide for direct payment of attorneys' fees to counsel for the class representatives. *Norman v. McKee,* 290 F. Supp. at 36. *See also City of Philadelphia v. Charles Pfizer & Co.,* 345 F.Supp. 454, 470–71 (S.D.N.Y.1972). Rather, the issue of attorneys' fees is more properly reserved for judicial consideration after settlement of the gross amount to be paid to the class. The present arrangement leaves the unfortunate impression that defendants are buying themselves out of a lawsuit by direct compensation to plaintiffs' counsel.

Therefore, in light of all these factors, we must disapprove the proposed settlement.