5 F.3d 534
 RICO Bus.Disp.Guide 8377
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Patricia ARATA, on behalf of herself and all others
similarly situated, Plaintiff-Appellee,
Charles C. BROWN, Plaintiff-Appellant,
v.
NU SKIN INTERNATIONAL, INC., a Utah corporation; Clara
McDermott, Defendants-Appellees.
 No. 92-15380.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 14, 1993.*
Decided Aug. 24, 1993.
 
 Before WALLACE, Chief Judge, and D.W. NELSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Nu Skin is a self-styled "multi-level marketing program," in which distributors, lured by the promise of big money earned through little effort, purchase cosmetic and hygiene products in an effort to ascend a ladder of marketing positions. It is, in other words, a pyramid scheme. Distributors' earnings depend on product sales and commissions for recruiting new participants. To remain in the distribution ladder, and thus earn commissions from "downline" distributors, distributors must maintain a volume of wholesale purchases of Nu Skin products. Patricia Arata, a Nu Skin distributor, filed a class action against Nu Skin International, Inc., Blake M. Roney, Keith Halls, Clara McDermott, and Steven J. Lund (collectively, "defendants"), alleging that the defendants, in promoting and selling Nu Skin distributorships, violated federal securities laws and the Racketeer Influenced and Corrupt Organizations Act. She also asserts a number of state law claims.
 
 
 3
 On November 26, 1991, the district court certified a settlement class and granted preliminary approval of a proposed settlement agreement. The settlement class includes more than 835,000 current and former Nu Skin distributors. On January 20, 1992, the appellant, Charles Brown, submitted his objections to the proposed settlement agreement. On January 31, 1992, after a hearing to consider objections, the district court granted final approval to the settlement and awarded fees and costs to plaintiff's counsel.
 
 
 4
 Brown timely filed a notice of appeal on February 28, 1992. He contends that the district court erred in certifying a mandatory settlement class and, in approving the settlement and the award of attorneys' fees, failed to protect the interests of absent class members. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 5
 * The defendants have moved to dismiss Brown's appeal, contending that he lacks standing. The plaintiffs-appellees join the defendants' motion.
 
 
 6
 The settlement class certified by the district court is defined as "all persons who are or were Independent Distributors in the Nu Skin International, Inc., network marketing program within the past three years and who incurred a net economic loss." The defendants concede that Brown signed a distributorship agreement and charged $285.99 worth of Nu Skin products. The defendants allege, however, that Brown never picked up the products he charged. He claims that he did. The facts alleged by Brown put him within the definition of a class member. He received notice and filed an objection. As a member of the class, his legal rights are affected by the settlement. He therefore has standing to appeal. Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1176 (9th Cir.1977); see also Newberg on Class Actions, Sec. 16.01, at 16-6 (3d ed. 1992).
 
 II
 
 7
 Brown contends that the district court abused its discretion in certifying the class because all the requirements of Rule 23(a) have not been met. In particular, he contends that there are not questions common to the class and that the claims of the representative plaintiff are not typical of the claims of the class. See Fed.R.Civ.P. 23(a)(2) & (3). We review the district court's certification of a class for an abuse of discretion. Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1304 (9th Cir.1990).
 
 
 8
 * It appears both from the complaint and from the record that there are common questions of law and fact. The complaint alleges that, to entice investors, the defendants created standardized, scripted telephone solicitations, promotional seminars, inspirational audio and video tapes, and written materials, all containing material misrepresentations and omissions. Declarations and exhibits in the record support the allegation that the defendants intended these uniform presentations to be used by others to recruit new distributors. Thus, the issue of the defendants' conduct in making misrepresentations and withholding information is common to all members of the class. The district court therefore did not abuse its discretion in finding the requisite commonality. See Cameron v. E.M. Adams & Co., 547 F.2d 473, 477 (9th Cir.1976); Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir.1975) (class of purchasers allegedly defrauded over a period of time by similar misrepresentations is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable), cert. denied, 429 U.S. 816 (1976); In re Activision Securities Litigation, 621 F.Supp. 415, 428 (N.D.Cal.1985); Bresson v. Thomson McKinnon Securities, Inc., 118 F.R.D. 339, 342 (S.D.N.Y.1988); cf. Soper v. Valone, 110 F.R.D. 8, 9 (W.D.N.Y.1985) (common factual and legal issues did not predominate where similar oral presentations were utilized to garner investments in different entities).
 
 B
 
 9
 Brown next contends that the representative plaintiff's claims are not typical of those of the class "for the simple reason that there was only one named plaintiff in the case and yet there are at least two different types of claimants or recoveries spelled out in the Refund Program of the Settlement Agreement." He argues that any distinction between types of recoveries provided for in the settlement agreement creates a conflict of interest such that the district court abused its discretion in finding sufficient typicality. Brown's contention is without merit.
 
 
 10
 The class is defined as Nu Skin distributors who incurred net economic loss. From allegations in the complaint as well as in her declaration, Arata's claims appear to be typical of the claims of the class. Thus, the explicit requirement of Rule 23(a)(3) has been met. Brown has failed to persuade us that any distinctions drawn in the structure of the refund program are significant. See Blackie, 524 F.2d at 909-10; see also Gates v. Dalton, 67 F.R.D. 621, 630 (E.D.N.Y.1975). Indeed, Brown's arguments in this regard go more to the reasonableness of the settlement than to the typicality of the class representative.
 
 III
 
 11
 Brown contends that district court abused its discretion by certifying a mandatory class under Rule 23(b). This contention is also without merit.
 
 
 12
 The central issue in this action was the defendants' conduct in implementing the Nu Skin marketing scheme. The complaint plainly seeks, in addition to damages, both equitable and injunctive relief. An opt-out provision might create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for the defendants. Moreover, the settlement agreement establishes a comprehensive equitable remedy--an ongoing refund program with no limit as to the amount to be refunded. Class members have a common interest in the preservation and equitable distribution of the refund program. Thus, the district court did not abuse its discretion in certifying a mandatory class under Rule 23(b)(1)(A) or (B). Cf. McDonnell Douglas v. United States District Court, 523 F.2d 1083, 1086 (9th Cir.1975), cert. denied, 425 U.S. 911 (1976).
 
 IV
 
 13
 Brown makes a number of arguments challenging the certification of a defendant class. There is, however, no indication in the record that the district court certified a defendant class.
 
 V
 
 14
 Finally, Brown challenges the fairness of the settlement agreement.
 
 
 15
 In this case, in accordance with the procedures outlined in the Manual for Complex Litigation 2d, the district court evaluated the proposed settlement and granted preliminary approval. See MCL2d, Sec. 30.44, at 241. Then, before granting final approval to the settlement agreement, the court solicited comments and held a hearing. See id. In its final order, the court indicated that it had considered the presentations of counsel and the relative merits of the claims and the defenses, the complexity of the case, the likely duration and expense of trial, and the risks attendant to both trial and appeal and had concluded that the proposed settlement was fair, reasonable, and adequate under the circumstances. Our review of that conclusion is a limited one. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (1992), cert. denied, 113 S.Ct. 408 (1992). "We are not permitted to substitute our notions of fairness for those of the district judge and the parties to the agreement." Id. (quotations omitted). Rather, we ask only whether the settlement is "fundamentally fair, adequate, and reasonable." Id. (quotations omitted).
 
 
 16
 We will not dwell long on the majority of Brown's arguments. Most rest almost entirely on supposition. For example, he speculates that the short time frame between the filing of the suit and proposal of settlement precluded any serious negotiation and suggests collusion. He also speculates that counsel failed to undertake discovery and he complains that the settlement is preferential to the defendants because it allows them to avoid defending multiple suits. Simply put, he has not made "a strong showing that the district court's decision was a clear abuse of discretion." Id. (quotations omitted). Brown's two strongest challenges are to the structure of the refund program and to the attorneys' fees provision. We briefly consider those two claims.
 
 
 17
 * The settlement agreement is weighted in favor of those who return products, providing them with a ninety percent refund, while those who can prove only economic loss receive a ten percent refund. Moreover, the total amount of refunds paid to those without products to return cannot exceed more than thirty percent of the entire amount refunded. Brown contends this distinction is arbitrary and capricious. However, the refund program appears to be responsive to the gravamen of the complaint. As Brown recognizes, the defendants' scheme required distributors to "inventory load." He does not explain why it was arbitrary for the settlement program to focus on remedying that concrete injury. Nor does he explain in what way the refund program falls outside of the range of reasonableness.
 
 B
 
 18
 The settlement agreement provides for an award of attorneys' fees equal to ten percent of the amount refunded, with $800,000 of those fees to be paid on a non-refundable basis from a reserve account established by the defendants. Relying upon Jamison v. Butcher & Sherrard, 68 F.R.D. 479, 484 (E.D.Pa.1975), Brown complains that the $800,000 payment creates the impression that the defendants have bought themselves out of the lawsuit. Jamison, however, is clearly distinguishable. In that case, the district court did not approve the settlement because the class received nothing beyond that to which it was already entitled under a previous settlement with SEC. Id. at 483. Under the circumstances, the court noted that a direct payment of attorneys' fees left the impression that the defendants were buying themselves out of the lawsuit. Id. at 483-84. Here, in contrast, the settlement provides a substantial remedy for the class. Brown also suggests that detailed time records should have been submitted in support of the fee award. However, under the settlement agreement, attorneys' fees are to be calculated as a percentage of the total recovery. See Six Mexican Workers, 904 F.2d at 1311; see also In re Activision Securities Litigation, 723 F.Supp. 1373, 1378-79 (N.D.Cal.1989) (in class action common fund or "equitable" cases the better practice is to set a percentage fee and, absent extraordinary circumstances, the rate should be set at thirty percent). Thus, it is not clear what purpose submission of time records would have served.
 
 VI
 
 19
 In short, Brown has failed to show that the district court abused its discretion in certifying a mandatory settlement class or in approving the settlement agreement.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3