8 F.3d 657
 Bishop COLLINS; Mario Valdez; Gary Taylor; Billy Bell;
Robert Halstien; Daniel Evans, and Randy Reed,
suing on behalf of themselves and all
others similarly situated,
Plaintiffs-Appellants,
v.
Gerald THOMPSON, et al., Defendant-Appellee.
 No. 93-35245.
 United States Court of Appeals,
Ninth Circuit.
 Submitted* Oct. 15, 1993.
Decided Oct. 25, 1993.
 
 Robert A. Stalker, Jr., Seattle, WA, for plaintiffs-appellants.
 Kathleen D. Mix, Chief Deputy Atty. Gen., John Scott Blonien, Sr. Asst. Atty. Gen., Pat L. DeMarco, Asst. Atty. Gen., Olympia, WA, for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington, Barbara J. Rothstein, Chief District Judge, Presiding.
 Before: WRIGHT, THOMPSON and T.G. NELSON, Circuit Judges.
 OPINION
 WRIGHT, Circuit Judge:
 
 
 1
 This appeal involves a consent decree between Washington state and inmates at the Washington State Reformatory which required the state to reduce inmate population. Because the state has reduced inmate population and because there are no ongoing constitutional violations at the reformatory, we affirm the district court's order vacating the decree.
 
 
 2
 Inmates at the reformatory filed a complaint against the state in February 1978. It alleged violations of 42 U.S.C. § 1983 because of the living conditions at the institution. The parties entered into a consent decree in June 1981 which, among other things, required the state to reduce the inmate population to 656. Part II of the consent decree, the primary subject of this appeal, read:
 
 
 3
 The parties stipulate to a continuation of this court's jurisdiction, and to the continued utilization of this court's Magistrate, for the purposes, and to the extent specified, below. Such jurisdiction will continue until such time as this agreement, on motion of either party or this court, is deemed to be fully consummated. At the close of jurisdiction, orders will enter making a final judgment incorporating the terms herein.
 
 
 4
 The district court approved the decree.
 
 
 5
 The state met the population goal in 1987. Shortly thereafter, the state began to renovate the reformatory, temporarily reducing the number of available cells. The district court modified the consent decree and temporarily reduced the maximum inmate population to 348, reflecting the number of cells available during renovation. The state appealed the temporary reduction order but dismissed the appeal in order to request the district court to vacate the decree.
 
 
 6
 The state moved to vacate the decree in February 1990. The district court denied the motion because the temporary reduction order was still in effect. The state appealed, asserting that the consent decree was consummated in 1987 when inmate population was reduced to 656 and that final judgment should be entered.
 
 
 7
 We remanded and instructed the district court to enter findings of fact and law as to (1) whether the consent decree was fully consummated in 1987 when the reformatory reduced inmate population to 656; (2) whether a final judgment should be entered; and (3) whether the final judgment should include a permanent cap on inmate population. On remand, the district court held that the consent decree was not fully consummated until renovation of the building was complete. The state appealed.
 
 
 8
 In August 1992, we vacated the district court's order and remanded with instructions to enter a final judgment "as contemplated by the consent decree." We held that the reformatory satisfied the terms of the agreement in 1987 when it reduced inmate population to 656 and that the renovation project was extraneous to the decree.
 
 
 9
 On remand, the district court found that there were no present or ongoing constitutional violations. It entered final judgment and vacated the decree, terminating the court's jurisdiction. The inmates appeal and argue two issues: (1) whether the district court properly interpreted the consent decree and entered a final judgment "as contemplated by the parties," and (2) whether the district court should exercise continuing jurisdiction.
 
 
 10
 1. The District Court Properly Entered Final Judgment Interpreting the Terms of the Decree As Ordered By This Court
 
 
 11
 "Interpretation of a consent decree is a question of law reviewed de novo." Thompson v. Enomoto, 915 F.2d 1383, 1388 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992). When interpreting the terms of a consent decree, the court applies general contract principles using the law of the state where the agreement was made. Collins v. Thompson, 679 F.2d 168, 170 (9th Cir.1982). Washington follows the context rule of contract interpretation. Berg v. Hudesman, 801 P.2d 222, 229 (Wash.1990). Under that rule, a court must consider "the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." Id.
 
 
 12
 We instructed the district court to interpret the terms of the consent decree and enter a final judgment. That court said that the only issue separating the parties was whether a final judgment should limit inmate population to 656. Because of the clear language of the consent decree, it found that the state was only required to reduce the inmate population to 656, not to maintain the population at that level. It also found that imposing a permanent population cap would require continuing jurisdiction and conflict with our clear order that jurisdiction end. The district court properly examined the terms of the agreement and entered final judgment accordingly.
 
 
 13
 2. Continuing Jurisdiction Was Properly Denied
 
 
 14
 The inmates argue that the court should continue its jurisdiction on an inactive basis to ensure that state officials do not violate any other constitutional rights or provisions of the final judgment. The state argues that the court should not maintain continuing jurisdiction in the absence of constitutional violations because it would be intrusive and implicates important federalism concerns.
 
 
 15
 The court properly refused to exercise continuing jurisdiction when it vacated the consent decree. A federal court may refuse to exercise continuing jurisdiction even though the parties have agreed to it. Parties cannot confer jurisdiction by stipulation or consent. California v. La Rue, 409 U.S. 109, 112-13 n. 3, 93 S.Ct. 390, 394, 34 L.Ed.2d 342 (1972); Morongo Band of Mission Indians v. California State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989).
 
 
 16
 In another prisoner rights case, we refused to continue a court-supervised monitoring program over a prison absent substantial evidence of continuing constitutional violations. Toussaint v. McCarthy, 926 F.2d 800, 802 (9th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 213, 116 L.Ed.2d 171 (1991). In Toussaint, we found no justification for the district court's order continuing the monitoring program in the absence of current violations. Id.
 
 
 17
 Similarly, the district court in this case said that "there are no present violations of constitutional rights" and that continued supervision would "result in the court's over-involvement in the management of the state's prison." Once again we decline to exercise continuing jurisdiction over state prison administration absent ongoing constitutional violations.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4