**Patricia ARATA, on behalf of herself and all others similarly situated, Plaintiff,**

**and**

**Don Lasko, Appellee,**

**v.**

**NU SKIN INTERNATIONAL, INC., a Utah corporation; Blake M. Roney; Keith Halls and Steven J. Lund, Defendants,**

**and**

**Clara McDermott, Defendant–Appellant.**

**No. 95–15870.**

United States Court of Appeals, Ninth Circuit.

Submitted * Aug. 16, 1996.

Decided Sept. 25, 1996.

---

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Ronald F. Price, Parsons, Davies, Kinghorn & Peters, Salt Lake City, Utah, for defendant-appellant.

Patrick Zummo, Zummo & Schirrmeister, Houston, Texas, for appellee.

Before: SNEED, NOONAN, Jr., and THOMPSON, Circuit Judges.

SNEED, Circuit Judge:

Defendant-appellant Clara McDermott appeals the district court's denial of her motion to enforce the settlement agreement entered into between the settlement class, represented by Patricia Arata, and defendants Nu Skin International, Inc. ("Nu Skin"), Blake M. Roney, Keith Halls, Steven J. Lund, and Clara McDermott in the underlying class action. McDermott contends, first, that the district court erred in terminating its jurisdiction to enforce the settlement agreement; and second, that the claims subsequently filed against her by Don Lasko in the United States District Court for the Southern District of Texas are precluded by the terms of the *Arata* settlement agreement. Because we affirm the district court's decision to ter-

minate its continuing jurisdiction, we do not reach McDermott's second contention.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

Nu Skin is a Utah-based network marketing organization that sells skin care, hair care, and nutritional products through independent distributors. These individuals under Nu Skin's plan make an initial investment to acquire a distributorship and inventory. They profit both by selling the products and by recruiting new distributors into their distributor networks. Distributors earn commissions on products purchased by their "downline" distributors.

In August 1991, distributor Patricia Arata initiated a class action lawsuit, in the United States District Court for the Northern District of California, against Nu Skin and several high-level Nu Skin executives and distributors (including McDermott), alleging that Nu Skin constitutes an illegal pyramid scheme. The gravamen of the complaint, which stated claims for violations of securities laws and civil RICO, fraud and deceit, false advertising, and unfair business practices, was this:

> Despite the lip service to "products," the true structure of Nu Skin is a classic pyramid scheme in which members/distributors focus their efforts on recruiting new distributors rather than on selling products, and must maintain "personal volume" of wholesale purchases in order to remain members of the distribution chain and reap commissions from the efforts of their "downline" distributors.... Thus, true success comes from recruiting active recruiters ... in an effort to establish a "downline" which will generate profits for the participant.

The parties entered into settlement discussions, and in November 1991 the district court entered an order preliminarily approving a settlement agreement and mandatory settlement class. As consideration for the release and dismissal of the claims, a refund program was established by which class members would receive a refund for products returned or for documented net economic loss. The claims being settled by the agreement were defined as:

> any and all claims, actions, causes of action, rights or liabilities, known or unknown, against the Defendants and any other person who is or was an Independent Distributor in the Nu Skin International, Inc. network marketing program arising within the past three years out of or in any way connected with or related to such person's participation in Nu Skin's network marketing program[.]

The parties agreed that they would "conclusively be deemed to have released any rights, claims or causes of action [against each other] arising out of, based upon, or otherwise related to the Settled Claims, excepting Reserved Claims"; and that they would be barred and permanently enjoined from prosecuting against each other "any and all individual or class claims which they had, have, or may have in the future, arising out of, based upon or otherwise related to any of the Settled Claims." Finally, the agreement provided that the district court would

> [r]eserve continuing and exclusive jurisdiction (a) over implementation of the settlement pursuant to further orders of the Court; (b) over the action until each and every act agreed to be performed by the parties hereto shall have been performed pursuant to this Settlement Agreement, including the implementation and administration of the Refund Program; (c) over enforcement, construction and interpretation of this Settlement Agreement and any subsequent related agreements; and (d) over the parties hereto for the enforcement of any continuing obligations hereunder.

A notice of the class action and proposed settlement was subsequently sent to potential settlement class members. Over the written objections of class member Charles Brown, who objected to the breadth of the class definition and release language, the district court entered an order and judgment of final

settlement approval on January 31, 1992. Ruling on Brown's subsequent appeal, this court affirmed the approval by memorandum disposition on August 23, 1993. *Arata v. Nu Skin Int'l, Inc.,* No. 92–15380, 1993 WL 321710 (9th Cir. Aug. 24, 1993).

However, before this court decided Brown's appeal, Lasko, a successful Nu Skin distributor since 1989, filed his complaint in the United States District Court for the Southern District of Texas on March 10, 1993. Lasko asserted claims for tortious interference, conspiracy, fraud, and libel against competing Nu Skin distributors Nathan Ricks, Scott Tillotson, NS Group, Clara McDermott, Danny White, and Kyle M. Wright. The heart of his allegations was that "[t]he defendants intentionally disrupted plaintiff's sales organization by inducing distributors who were a part of the Lasko group to sever their relationship with plaintiff and secretly join defendants' organization, in violation of the Nu Skin policies, procedures and agreements."

Shortly after Lasko filed his complaint, McDermott filed a motion in the Northern District of California for enforcement of the *Arata* settlement agreement to bar Lasko from proceeding with his claims. Two days before the hearing scheduled on that motion, McDermott withdrew the motion, reserving the right to re-notice it at a later date. Two months later, in August 1993, this court issued its memorandum decision in *Arata v. Nu Skin Int'l, Inc.* In March 1995, after nearly two years of litigation in Houston, McDermott returned to the Northern District of California to renew her motion to enforce the *Arata* settlement agreement against Lasko. In April, the district court denied the motion:

> Upon review of this matter, the Court hereby divests itself of jurisdiction over the enforcement of the *Arata* settlement

agreement. The Order approving the settlement agreement was signed over three years ago, and the Court finds that no further purpose is served by continuing to retain jurisdiction over this matter.

> For this reason, defendant McDermott's motion to enforce the settlement agreement is DENIED.

McDermott timely appealed. We have jurisdiction to review the district court's action under 28 U.S.C. § 1291.

## II.

### *THE DISTRICT COURT'S JURISDICTION*

■ McDermott contends that, under the terms of the Settlement Agreement, the district court had an obligation to exercise jurisdiction over her motion, and that it therefore erred in divesting itself of jurisdiction.[1] Whether a district court has jurisdiction to enforce a settlement agreement is a question of law subject to de novo review. *Hagestad v. Tragesser,* 49 F.3d 1430, 1432–33 (9th Cir. 1995). Here, however, the question is slightly different; it is whether the district court had the authority to terminate its continuing jurisdiction, the initial retention of which was a discretionary act. It is arguable, therefore, that the court's action is subject to abuse of discretion review. However, we need not decide which standard applies, because we hold that the court's action withstands scrutiny under either standard.

■ According to recent Supreme Court authority, district courts have no inherent power to enforce settlement agreements entered into by parties litigating before them. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375,–––––, 114 S.Ct. 1673, 1675–76, 128 L.Ed.2d 391 (1994); *Hagestad,* 49 F.3d at 1433. However, if the district court explicitly retains jurisdiction over the settlement agreement, or incorporates the

---

1. McDermott's argument that Lasko is judicially estopped from asserting the district court's lack of jurisdiction lacks merit. Lasko opposed CJM's counterclaim in the Southern District of Texas on the ground that that court lacked subject matter jurisdiction over issues related to the *Arata* settlement agreement, due to the Northern District of California's retention of exclusive jurisdiction. He opposed McDermott's motion in the Northern District of California on the ground that that court lacked jurisdiction over him because he was not a member of the *Arata* settlement class. Those positions are not inconsistent.

terms of the agreement in its dismissal order (as is common in class action settlements), then "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1677; *Hagestad,* 49 F.3d at 1433. Here, the district court did explicitly reserve "continuing and exclusive jurisdiction" to enforce the settlement agreement. Therefore, it had subject matter jurisdiction at the time that McDermott filed her motion to enforce the agreement.

■ However, the district court was under no obligation to reserve such jurisdiction in the first place:

If the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2) ... the parties' compliance with the terms of the settlement contract (or the court's 'retention of jurisdiction' over the settlement contract) may, *in the court's discretion,* be one of the terms set forth in the order.

*Kokkonen,* —— U.S. at ——, 114 S.Ct. at 1677 (second emphasis added). Although the rules governing federal class actions require court approval of any settlement agreement, they do not require that the court retain continuing jurisdiction over these agreements. *See* Fed.R.Civ.P. 23(e).

■ Moreover, the mere fact that the parties agree that the court should exercise continuing jurisdiction is not binding on the court. *California v. La Rue,* 409 U.S. 109, 112–13 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972) (parties may not confer jurisdiction upon the courts by stipulation); *Collins v. Thompson,* 8 F.3d 657, 659 (9th Cir.1993) ("A federal court may refuse to exercise continuing jurisdiction even though the parties have agreed to it."), *cert. denied,* —— U.S. ——, 114 S.Ct. 2133, 128 L.Ed.2d 864 (1994); *Morongo Band of Mission Indians v. Cali-*

*fornia State Bd. of Equalization,* 858 F.2d 1376, 1380 (9th Cir.1988) ("The parties have no power to confer jurisdiction on the district court by agreement or consent."), *cert. denied by Miller v. Morongo Band of Mission Indians,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989); *Taylor v. Wolff,* 158 F.R.D. 675, 676 (D.Nev.1994) ("an agreement between the parties that this court would maintain continued jurisdiction to enforce the consent decree indefinitely ... would not bind me to retain jurisdiction"). In *Collins, Morongo Band,* and *Taylor,* the respective district courts retained continuing jurisdiction over consent decrees approved by them, and then subsequently dissolved the decrees after finding that the parties had satisfied their obligations under them. The question in those cases, therefore, was whether the court's explicitly retained jurisdiction should be maintained after that point.

Here, the court issued no order "dissolving" the settlement agreement. It did, however, issue an order on October 26, 1992, confirming the parties' compliance with the settlement agreement:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the terms of the Settlement Agreement herein ... have been complied with and completed to the satisfaction of the Court in a manner that is fair, adequate and reasonable.

Its exercise of jurisdiction over the substantive aspects of the agreement (the refund program) was therefore no longer necessary. Moreover, its continued exercise of jurisdiction over the permanent injunction against relitigation was unnecessary, since the usual way to raise the res judicata effect of any final judgment, including a settlement agreement, is by "appropriate plea or motion in the subsequent proceeding." 1B *Moore's Federal Practice* ¶ 0.408[2] at III–119. We therefore hold that the district court's decision to terminate its previously retained jurisdiction was well within its discretion, and poses no prejudice to McDermott.[2]

**2.** McDermott argues that only the Northern District of California has the power to enforce the

permanent injunction against relitigation contained in the settlement agreement. It is true

## III.

### CONCLUSION

Because we affirm the district court judgment on the basis of its divestment of jurisdiction, we decline to reach the merits of McDermott's argument that Lasko's claims are precluded by the terms of the *Arata* settlement agreement. That question is one for the court now considering Lasko's claims.

AFFIRMED.

that only the issuing court can enforce its own injunction by means of contempt proceedings. *See* 18 U.S.C. § 401; *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1282–83 (5th Cir.1989); *see also Treadaway v. Academy of Motion Picture Arts & Sciences*, 783 F.2d 1418, 1422 (9th Cir. 1986) (Fed.R.Civ.P. 60(b) motion for relief from a court order should generally be brought only in that court). However, courts do have the power to determine the res judicata effect of other courts' orders.

Nor do we accept Lasko's characterization of the district court's order as a modification of its injunction under Fed.R.Civ.P. 60(b)(5). Although district courts have the power to modify or dissolve even a permanent injunction, some sort of notice and hearing must be provided to the parties before it does so. *United States v. Western Elec. Co.*, 894 F.2d 430, 435 (D.C.Cir. 1990); 7 (Part 2) *Moore's Federal Procedure* ¶ 65.08 at 65–148. There is no indication that the court followed such procedures here.