**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION,

No. 19-16361

D.C. No.
3:15-md-02672-
CRB

NICHOLAS BENIPAYO,
*Plaintiff*,

and

FARCHIONE MOTORS, INC.,
*Claimant-Appellant*,

v.

VOLKSWAGEN GROUP OF AMERICA,
INC.,
*Defendant-Appellee.*

IN RE VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION,

No. 19-16362

D.C. No. 3:15-md-02672-CRB

NICHOLAS BENIPAYO,

*Plaintiff,*

and

AUTOVID, LLC,

*Claimant-Appellant*,

v.

VOLKSWAGEN GROUP OF AMERICA, INC.,

*Defendant-Appellee.*

IN RE VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION,

No. 19-16363

D.C. No. 3:15-md-02672-CRB

NICHOLAS BENIPAYO,
*Plaintiff*,

and

KENNEDY'S AUTOS, LLC,
*Claimant-Appellant*,

v.

VOLKSWAGEN GROUP OF AMERICA, INC.,
*Defendant-Appellee.*

| | |
|---|---|
| IN RE VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION, | No. 19-16376 |
| | D.C. No. 3:15-md-02672-CRB |
| NICHOLAS BENIPAYO, *Plaintiff*, | |
| and | OPINION |
| HADDAD CLAIMANTS, *Claimant-Appellant*, | |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted June 11, 2020
San Francisco, California

Filed September 10, 2020

Before:  Mary M. Schroeder and Patrick J. Bumatay, Circuit Judges, and Brian M. Morris,[*] District Judge.

Opinion by Judge Bumatay

## SUMMARY[**]

### Settlement Agreement

The panel affirmed the district court's denial of claimants' motions to enforce a settlement agreement that the district court approved between Volkswagen Group of America, Inc. and owners and lessees of diesel cars that had defeat devices, which altered emissions profiles of the cars.

Under the settlement agreement, certain vehicles purchased from junkyards or salvage yards, known as "branded title" vehicles, were ineligible for compensation. In February 2018, the Claims Supervisor announced that the Claims Review Committee had adopted a general Framework to expand the types of vehicles ineligible for compensation by revising the exclusion for "branded title" vehicles to also include those acquired from the "equivalent" of a junkyard or salvage yard, i.e., an insurance auction. Claimants all purchased a Volkswagen "branded title" vehicle from an insurance auction in the months following

---

[*] The Honorable Brian M. Morris, United States District Judge for the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the approval of the settlement agreement and sought compensation from Volkswagen. Their claims were denied.

The panel held that the district court had the authority to review claimants' motions to enforce the settlement agreement.  Because the district court expressly retained authority to "ensure compliance" with the settlement agreement's terms, the district court was well within its jurisdiction to determine whether the new Framework breached the agreement.  The panel held further that the district court did not err in reaching the merits of claimants' motions without resolving their status as third-party beneficiaries.

The panel held that the district court had the authority to, and did, approve the amendment to the settlement agreement.  Accordingly, the Framework was an enforceable part of the settlement agreement.  The panel held further that the district court did not abuse its discretion in finding the Framework as a manifestation of the parties' assent to modify the settlement.  The panel rejected claimants' argument that any modification to the agreement required a substantial change of circumstances and a notice to the class. The panel also rejected claimants' contention that Volkswagen should be estopped from denying their claims based on claimant's reliance on Volkswagen's course of performance and pre-Framework agreement in purchasing "branded title" cars.

The panel concluded that, given the settlement agreement's express modification procedures, the district court did not abuse its discretion in construing the Framework as such a modification and approving it in response to claimants' motions.

## COUNSEL

John H. Cigavic III (argued), Basic Legal Services, San Francisco, California, for Claimants-Appellants Farchione Motors Inc., Autovid LLC, and Kennedy's Autos LLC.

Murray B. Silverstein (argued) and Jacob L. Boehner, Greenspoon Marder LLP, Tampa, Florida; Anthony A.B. Dogali (argued) and Barbara U. Uberoi, Dogali Law Group P.A., Tampa, Florida; for Claimants-Appellants the Haddad Claimants.

Diane L. McGimsey (argued), Sullivan & Cromwell LLP, Los Angeles, California; Robert J. Giuffra Jr., Sharon L. Nelles, William B. Monahan, Sullivan & Cromwell LLP, New York, New York; for Defendant-Appellee.

## OPINION

BUMATAY, Circuit Judge:

It doesn't take a mechanic to understand this case. While ostensibly it involves whether certain vehicles meet specific criteria of operability and title to recover funds from a complex class action settlement, the heart of the dispute is simpler than that. Farchione Motors, Autovid Inc., Kennedy's Auto LLC, and the Haddad Claimants all argue that they are entitled to payouts under a settlement agreement between Volkswagen Group of America and many owners and lessees of its vehicles. But Volkswagen counters that the settlement bars their claims, and even if it didn't, their claims were properly denied after the district court approved an amendment to the settlement's eligibility criteria. Reading the plain terms of the settlement

agreement, we are convinced that the district court got it right.

## I.

In September 2015, the Environmental Protection Agency accused Volkswagen of violating the Clean Air Act. According to the EPA, Volkswagen installed a software device known as a "defeat device" in its 2.0-liter and 3.0-liter diesel cars, which altered the emissions profiles of the cars during emissions tests.  With the defeat devices, these cars could emit up to 40 times more pollution than standards allowed.

Volkswagen and the government eventually entered into settlement, which involved criminal penalties, restitution payments, and injunctive relief to prevent future violations.[1] Parallel to the law enforcement proceedings, Volkswagen faced a slew of private lawsuits from owners and lessees of the diesel cars fitted with the defeat devices.  All federal court cases were consolidated in the Northern District of California.

In June 2016, Volkswagen and some of its affiliates entered into a nationwide class-action settlement agreement involving approximately 500,000 cars.    Under the agreement, Volkswagen would (1) reimburse the owners or lessees of qualifying vehicles for the harm suffered because of the emissions cheating and (2) remove the offending vehicles from the road.  The district court approved the settlement agreement in October 2016, but retained the

---

[1] U.S. Dep't of Justice, *Volkswagen AG Agrees to Plead Guilty and Pay $4.3 Billion in Criminal and Civil Penalties* (Jan. 11, 2017), https://www.justice.gov/opa/pr/volkswagen-ag-agrees-plead-guilty-and -pay-43-billion-criminal-and-civil-penalties-six.

jurisdiction to "enforce, administer, and ensure compliance" with its terms. This court affirmed the district court's approval of the settlement. *See In re Volkswagen "Clean Diesel" Mktg.*, 895 F.3d 597, 619 (9th Cir. 2018).

The agreement provides for multiple levels of review for each claim for compensation. First, Volkswagen makes the initial eligibility determination. Second, a court-appointed, third-party Claims Supervisor reviews and validates the eligibility of each claim. Finally, a Claims Review Committee (or "CRC") conducts a third level of review for any claimant who appeals an eligibility decision. The Claims Review Committee consists of a representative from Volkswagen, a representative from the Class Counsel, and a court-appointed third party.[2] The agreement provides that the Claims Review Committee's decisions are "final determinations."

The terms and provisions of the settlement may "be amended, modified, or expanded by written agreement of the Parties and approval of the Court." This provision also allows for amendments, modifications, or expansions, by written agreement, "without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Approval Order and do not limit the rights of Class Members under" the settlement agreement. The agreement defines "Parties" as Volkswagen and the Class Representatives.[3] A "Party" to the agreement may seek to

---

[2] The district court appointed the Honorable Fern Smith, a retired district judge of the Northern District of California, to serve as the third-party CRC member.

[3] According to the agreement, a "Class Representative" is a named plaintiff in the underlying class action who agreed to represent the class for purposes of obtaining approval of the settlement.

enforce the agreement for a "breach" after providing notice to the "breaching Party."  California law governs the settlement agreement.

Under the settlement agreement, certain vehicles purchased from junkyards or salvage yards were ineligible for compensation.  These vehicles, known as "branded title" vehicles, had titles such as "Junk," "Rebuilt," or "Salvaged" and were deemed damaged or unsafe to drive.  In February 2018, the Claims Supervisor announced that the Claims Review Committee expanded the types of vehicles ineligible for compensation.  According to the Claims Supervisor, the Claims Review Committee adopted a general framework (the "Framework") to process "branded title" claims based on a "holistic review" of the agreement.  As relevant here, the Framework determined that the exclusion for "branded title" vehicles would also include those acquired from the "equivalent" of a junkyard or salvage yard, i.e., an "insurance auction."  The new Framework applied to all pending "branded title" claims.

Farchione Motors, Inc., Autovid, LLC, Kennedy's Autos, LLC, and the Haddad Claimants (collectively, the "Claimants") all purchased a Volkswagen "branded title" vehicle from an insurance auction in the months following the approval of the agreement and sought compensation from Volkswagen.  After the adoption of the new Framework, their requests were denied.

Claimants filed motions to enforce the agreement, arguing that their "branded title" claims should have been approved under the pre-Framework settlement and that the Framework improperly extinguished their claims.  After establishing that it retained jurisdiction to enforce compliance with the agreement, the district court concluded that Claimants' "branded title" claims did not further the

goals of the settlement agreement.  The district court found that Claimants purchased the cars after Volkswagen's fraud became public, so they didn't unknowingly suffer harm from the auto manufacturer's actions.  Moreover, the district court noted that Claimants purchased the vast majority of the cars after they were already taken off the road (since they were damaged or unsafe to drive) and, therefore, they were not polluting roads.  The district court adduced that Claimants bought the cars to profit from the settlement.

The district court characterized the Framework as "clos[ing] loopholes" in the agreement and concluded that it was consistent with the goals of the settlement.  The district court then construed the Framework as an amendment to the agreement and approved it as such.  As Claimants were then ineligible for compensation under the amended agreement, the district court denied their motions to enforce.  Claimants now appeal that decision.

We review the district court's denial of a motion to enforce a settlement agreement for abuse of discretion. *Wilcox v. Arpaio*, 753 F.3d 872, 875 (9th Cir. 2014).  Under this deferential standard, we must affirm the district court absent "an error of law or clearly erroneous findings of fact." *Id.* at 875.  We review questions of law, including the interpretation of a settlement agreement, de novo. *Parsons v. Ryan*, 949 F.3d 443, 453 (9th Cir. 2020).  Under California law, we look to the plain meaning of the settlement's terms. *See Navarro v. Mukasey*, 518 F.3d 729, 734 (9th Cir. 2008).

## II.

There are two core questions in this case.  The threshold question is whether the district court had the authority to review Claimants' motions to enforce the settlement agreement.  The second is whether the district court was

right to deny the motions and instead treat the Framework as an amendment to the agreement.  We believe the district court properly handled these questions.

## A.

Volkswagen advances the somewhat odd position that we should affirm the district court even though it believes the district court shouldn't have considered Claimants' motions to enforce the settlement agreement in the first place.  Volkswagen asserts that the settlement precluded judicial review of claims since it establishes the Claim Review Committee as the final arbiter of eligibility for compensation.  And even if not, it asserts that Claimants are not a party to the agreement, and, therefore, can't bring a motion to enforce it.  Instead of resolving these questions, the district court assumed the motions were properly before the court and reached their merits.  We see nothing wrong with that.

As the district court expressly retained authority to "ensure compliance" with the settlement agreement's terms, the district court was well within its jurisdiction to determine whether the new Framework breached the agreement.  *See Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1268–69 (9th Cir. 1996) ("[I]f the district court explicitly retains jurisdiction over the settlement agreement, or incorporates the terms of the agreement in its dismissal order (as is common in class action settlements), then 'a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).  Indeed, a district court must have "power to enforce" its order approving a settlement "to protect the integrity of a complex class settlement over which it retained jurisdiction."  *In re Prudential Ins. Co. of Am. Sales Practice*

*Litig.*, 261 F.3d 355, 367–68 (3d Cir. 2001).    Since Claimants alleged a breach of the Volkswagen settlement, the district court properly exercised its ancillary jurisdiction over their motions.    *See Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007) ("[T]he party seeking enforcement of the settlement agreement must allege a violation of the settlement agreement in order to establish ancillary jurisdiction.").

Although the district court didn't decide these questions, Claimants brought their motions as class members and third-party beneficiaries to the settlement agreement.    California law recognizes that third-party beneficiaries may seek to enforce an agreement if they are within the class of persons intended to be benefited by that agreement.    *Gen. Motors Corp. v. Superior Court*, 15 Cal. Rptr. 2d 622, 628 (Ct. App. 1993); *cf. Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992) (recognizing as blackletter contract law that an intended third-party beneficiary may bring an action to enforce an agreement).    In turn, we have permitted judges to assume, without deciding, that a plaintiff is a third-party beneficiary under a contract or agreement. *See, e.g.*, *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1086 (9th Cir. 2012) (assuming plaintiffs can qualify as third-party beneficiaries of leases); *Lucas v. Bechtel Corp.*, 800 F.2d 839, 848 (9th Cir. 1986) (assuming a third party was the intended beneficiary of a contract governed by the Labor-Management Relations Act).    The practice under California law is no different.    *See, e.g.*, *Los Angeles Cnty. Metro. Transp. Auth. v. Shea-Kiewit-Kenny*, 69 Cal. Rptr. 2d 431 n.1 (Ct. App. 1997) (assuming company could sue the transit authority for breach of contractual covenants). Accordingly, the district court did not err in reaching the

merits of Claimants' motions without resolving their status as third-party beneficiaries.[4]

## B.

We next turn to the merits of Claimants' motions to enforce the agreement. In denying Claimants' motions, the district court construed the Framework as an effort by the Parties to amend the agreement and so ratified it. With the new Framework in place, the district court then agreed that Claimants were ineligible for compensation under the agreement. The district court didn't abuse its discretion in ruling in this manner.

By its plain language, "[t]he terms and provisions of th[e] Class Action Agreement may be amended, modified, or expanded by written agreement of the Parties and

---

[4] To be clear, courts can't assume Article III jurisdiction to reach the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013) (observing that the Court rejected the "doctrine of hypothetical jurisdiction" to reach the merits when a court lacked Article III jurisdiction on account of standing). Here, the district court retained subject matter jurisdiction over the settlement agreement and the Claimants undoubtedly satisfy the three elements of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (establishing injury in fact, causation, and redressability as the "irreducible constitutional minimum" of standing). In this case, whether Claimants possess legally enforceable rights under the settlement agreement is a question of the merits rather than one of constitutional standing. *Lindsey v. Starwood Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010) (unpublished); *see also Harris v. Amgen, Inc.*, 573 F.3d 728, 732 n.3 (9th Cir. 2009); *cf. Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 572 (9th Cir. 2004) (explaining that "neither Article III nor prudential standing is implicated by the efforts of non-intervening objectors to appeal class-action settlements."). Accordingly, we see no Article III issue here.

approval of the Court[.]"  Thus, after a "written agreement of the Parties," the district court need only ratify the change to make it an enforceable part of the agreement.  The district court did so here.  The district court treated the Framework as the Parties' written "agree[ment] to modify how certain claims for benefits are handled to better reflect the goals of the settlement[]."  As the district court found, excluding Claimants from the agreement was consistent with the settlement's goals since they purchased their vehicles after the existence of the defeat devices became public and after most of the vehicles were already off the road.  The district court's justification for ratifying the amendment was, thus, not "illogical, implausible, or without any support" in the record. *United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009).  Accordingly, the district court had the authority to, and did, approve the amendment to the agreement.  The Framework is now an enforceable part of the settlement agreement.

Claimants argue that the district court didn't properly follow the agreement's modification procedures.  They say that the "Parties" didn't agree to the Framework as required by the agreement; instead, only the Claims Review Committee did.  But the district court found otherwise.  The district court considered Volkswagen and Class Counsel as acting through the Claims Review Committee to reach this agreement.  Such a finding was not clearly erroneous.  After all, the Claims Supervisor reported that the "Parties have been working with the court-appointed CRC" to address how the "eligibility requirements" in the agreement applied to "branded title" claims.  The Claims Supervisor further documented that "the Parties and the CRC undertook to further scrutinize whether the [branded title] claims should be deemed eligible."  Finally, the report indicated, in response to that effort, the "CRC adopted a general

framework of processing branded title claims." Accordingly, the district court didn't abuse its discretion in finding the Framework as a manifestation of the Parties' assent to modify the settlement.

Claimants also assert that any modification to the agreement required a substantial change of circumstances and a notice to the class. But the agreement's modification provision requires neither. Instead, the plain terms of the agreement show no notice to the class is necessary if the modification has court approval. Additionally, the cases suggesting that a change of circumstances is necessary to amend a class action settlement don't involve the situation here—where both Parties agreed to the amendment using the agreement's modification procedures. *See, e.g.*, *Flores v. Lynch*, 828 F.3d 898, 909–10 (9th Cir. 2016) (denying a Rule 60(b)(5) motion by one party to modify a consent decree in light of a change in circumstances). Absent an express term requiring notice or a change of circumstances to validate an amendment, we will not read one into the agreement.

Claimants also argue that Volkswagen should be estopped from denying their claims. It is true that Volkswagen honored at least 84 of Claimants' requests for compensation prior to adopting the new Framework. Consequently, Claimants contend that they relied on Volkswagen's course of performance and the pre-Framework agreement in purchasing "branded title" cars.

But Claimants' reliance arguments cannot override the plain terms of the settlement agreement—which expressly grant the Parties the authority to amend the agreement with court approval. Carving out an exception to the modification procedures based on a third party's detrimental reliance would constitute an impermissible judicial revision of the agreement. *Cf. Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1026 (9th Cir. 1998) ("Neither the district court nor this court have the ability to delete, modify or substitute certain provisions [of a settlement agreement].") (simplified), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).     Plus, any reliance on Volkswagen's implementation of the agreement should have been tempered by the possibility that Volkswagen and Class Counsel would agree to change the settlement's eligibility criteria under the modification procedures.

## III.

Given the settlement agreement's express modification procedures, we see no abuse of discretion in the district court construing the Framework as such a modification and approving it in response to Claimants' motions.

**AFFIRMED**.