GISMONDI, PAGLIA, SHERLING, M.D., P.C., Plaintiff,

v.

Michael J. FRANCO, M.D., Defendant.

No. 00CIV3565CMMDF.

United States District Court, S.D. New York.

June 18, 2002.

Richard A. Hubell, Esq., The Dweck Law Firm, LLP, for Plaintiff.

Mark S. Gregory, Kelley Drye & Warren, LLP, for Defendant.

## MEMORANDUM DECISION AND ORDER VACATING PERMANENT INJUNCTION

MCMAHON, District Judge.

On June 22, 2000, this Court, after a bench trial on a consolidated motion for a preliminary and permanent injunction, imposed an injunction precluding Defendant Dr. Michael Franco from practicing medicine at Greenwich Hospital, to which he had repaired following his departure from practice with Plaintiff corporation, for a period of three years. The Court's findings of fact and conclusions of law are set forth in an opinion which is published at 104 F.Supp.2d 223; familiarity with that opinion is assumed.

The injunction was entered to enforce a clause in plaintiff's employment agreement that prevented him, for three years after his termination from GPS, from practicing medicine within a 15–mile radius of Mamaroneck and Port Chester, New York, excepting only Stamford, Connecticut. The prohibition, I found, was directed especially at Greenwich, Connecticut, where GPS hoped to expand its patient base and hospital affiliation. Concluding that the covenant was reasonable in time, place and scope, and that defendant had deliberately procured his own discharge in the hope of evading the covenant, I enjoined Dr. Franco from engaging in any sort of patient care—including teaching involving patient care—at Greenwich Hospital for a period to conclude on May 1 of next year.

Now defendant moves for vacatur of the final judgment. He contends that GPS, while still an active and registered professional corporation, has in fact gone out of business and no longer practices medicine, and that its principals have become shareholders and employees of a still larger medical group, the Westchester Medical Group. Noting (correctly) that the benefits under his restrictive covenant are not

assignable without his consent, Franco points out that he did not agree to the assignment of GPS's contract rights to Westchester Medical Group. He argues that the judgment should be vacated because plaintiff no longer has any interest in preventing him from practicing medicine in Greenwich.[1]

Plaintiff retorts that, while GPS has sold its assets, and its employees (including Drs. Gismondi, Paglia and Sherling) have become employees of Westchester Medical Group, the corporation's "protectable interest" in preventing plaintiff from practicing medicine in Greenwich has not diminished since the injunction was entered. The corporation still exists. While it is not currently engaged in the practice of medicine, Drs. Gismondi, Paglia and Sherling have the right to return to the status quo ante if things don't work out with WMG. Plaintiff further notes that the benefits of Franco's restrictive covenant inure by the contract's terms to GPS's "successors" as well as to consensual assigns, and contends that WMG is the "revocable successor" (whatever that means) of GPS.

Defendant replies that the law recognizes no such thing as a "revocable successor" to a corporation, especially to a corporation that has not dissolved and remains in active status under the law of the State of New York. It notes that WMG did not purport to acquire all the assets of GPS and expressly declined to assume the liabilities and obligations of GPS.

■ Under Federal Rule of Civil Procedure (FRCP) 60(b)(5), a court may relieve a party from a final judgment if "it is no longer equitable that the judgment should have prospective application." With regard to injunctions, the Supreme Court has explained:

We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions[.]  ...  Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there would still be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.

*System Fed'n No. 91, Ry. Employees' Dept. AFL–CIO v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961) (*quoting United States v. Swift Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932)). When considering the continued equity of injunctive relief, a court should thus recognize the need for flexibility. *See Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 380, 112 S.Ct. 748, 758, 116 L.Ed.2d 867 (1992)(analyzing Rule 60(b)(5) in the context of a consent decree). Plaintiff does not challenge the Court's authority to modify its prior judgment.

The Court has reviewed the letter agreement by which the principals of GPS became shareholders and employees of WMG, as well as the attachment thereto, which include, among other things, employment contracts between WMG and the principals of GPS; a separate and somewhat different employment contracts between WMG and GPS's employees; a stockholders agreement for WMG's stockholders; an Income Agreement; an Assignment and Bill of Sale for GPS's assets; and various consents and shares of stock in WMG. These documents set out in a comprehensive way the agreement between WMG and GPS.

1. It appears that plaintiff's principals joined WMG over a year ago. Why defendant—who has been at Greenwich Hospital, albeit on restricted duty, all that time—waited until this spring to do anything about it is unclear but irrelevant to this application.

■ After reviewing the documents, there is no way I can describe WMG as a "successor" to GPS within the law's understanding of that term. Black's Law Dictionary defines "successor" with reference to corporations as an entity that "through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary 1446 (7th ed.1999). WMG neither became invested with GPS's rights nor assumed its liabilities. Rather, it bought GPS's assets (or at least those of it that were for sale, such as furnishings and equipment), subleased its premises, and employed its physicians and its other personnel. GPS did not merge into WMG—plaintiff proffers no evidence to suggest that it is not still an active corporation, while defendant has established that GPS is still registered with the Secretary of State. Thus, WMG does not fit within the definition of the legal term "successor," and cannot claim any benefit from Dr. Franco's restrictive covenant by virtue of Paragraph 10 of his employment agreement with GPS. Since there is no other way that WMG could have become invested with GPS's right to restrict Franco's employment (except by consensual assignment, which did not occur), WMG is not entitled to the benefits of the injunction entered by this Court.

■ The question then becomes whether GPS has any continuing interest in barring Dr. Franco from practicing medicine in Greenwich. Given the extreme disfavor in which the law holds restrictive covenants, and the strict construc-

tion that must be given to such covenants, it would be inequitable for the injunction to continue in force if GPS as an entity no longer has any interest in where Franco works. I conclude that GPS has no such interest.

As part of GPS's arrangement with WMG, Drs. Gismondi, Paglia, Sherling and the physicians associated with them all signed employment contracts obligating them to work exclusively for WMG—to be precise, requiring that each of them "devote his entire time, attention and energies to the business of [WMG] during its regular office hours and at any other time during the week as may from time to time be requested by [WMG] ... and shall not, during the term of this agreement without the consent of the Board of Directors of [WMG], either directly or indirectly engage in the practice of medicine except on behalf of [WMG]." See page 2, Para. 4 of the Employment Agreement between WMG and Drs. Paglia and Sherling, respectively.[2] Thus, GPS is no longer in the practice of medicine, and has no present interest in restricting Dr. Franco's employment. It has not had any such interest since last May. The fact that a corporate shell remains in existence is irrelevant, because that corporate shell cannot engage in the practice of medicine as long as its principals are contractually bound to devote their full efforts to WMG's practice.

Plaintiff argues that, if things do not go well between the principals of the now dormant GPS and WMG, the old practice can be reconstituted (minus those of its employees who have signed restrictive covenants as a condition of their employment

---

2. I can find no employment agreement for Dr. Gismondi in the materials submitted to me. However, the letter agreement dated April 4, 2001 obligates him to become an employee of WMG on the same terms and conditions as Drs. Paglia and Sherling. Whether he signed such an agreement or not, it is quite clear that Dr. Gismondi could not continue practicing medicine under the aegis of the GPS professional corporation consistent with the obligations of Drs. Paglia and Sherling under their employment agreements—which were, concededly, signed.

by WMG).[3] However, that inchoate (not to mention unlikely) possibility does not alter the analysis. Restrictive covenants are disfavored at law, and so their terms must be construed strictly. *See, e.g., EarthWeb, Inc. v. Schlack,* 71 F.Supp.2d 299, 312 (S.D.N.Y.1999) (*citing Business Networks of New York, Inc. v. Complete Network Solutions, Inc.,* 265 A.D.2d 194, 195, 696 N.Y.S.2d 433, 435 (1st Dep't 1999)). Among the terms that I must strictly construe is the one that designates who are parties to the contract and who are entitled to its benefits. The only party entitled to benefit from the Court's injunction is GPS, and the reason GPS is entitled to that injunction is so that it can further its interest in practicing medicine in and near Greenwich. But GPS is not practicing medicine at all, let alone in or near Greenwich, and the record does not contain the slightest indication that GPS intends to resume the active practice of medicine any time soon. At present, the only party benefiting from Dr. Franco's situation is WMG, the employer of Drs. Gismondi, Paglia and Sherling. But WMG has no right to this benefit absent Dr. Franco's consent—which defendant has no intention of providing.

The conclusion that GPS has no present interest in restricting Dr. Franco's employment is inescapable. The physicians who are affiliated with GPS chose to practice medicine under corporate form and they must live with the consequences of their choice. "Combining" rather than merging with WMG may be the way that GPS found to "expand" its practice into Connecticut, but that combination came with a cost—the cost of losing the benefit of the restrictive covenant barring Dr.

Franco from practicing at Greenwich Hospital. Indeed, had this Court been confronted with the facts now before it two years ago, no injunction would have issued.

Nonetheless, defendant asks for more than he is entitled to receive. The Court's judgment comprehended more than the injunction; I also entered an order denying GPS's claim for liquidated damages (which I assume Franco does not wish to wipe off the books) and awarding damages to plaintiff for breach of defendant's agreement to pay off a note. I have no reason to vacate either aspect of the final judgment. I do, however, vacate the injunction enforcing the restrictive covenant against Dr. Franco, and I direct that the injunction dissolve immediately. The Clerk of the Court is directed to modify the final judgment by striking the decretal paragraph ordering the injunction.

This constitutes the decision and order of the Court.

---

**3.** Drs. Klares and Carrao, who were employees of GPS prior to its arrangement with WMG, also signed employment agreements with WMG. Their agreements, unlike those of Drs. Paglia and Sherling (and Gismondi, should he have signed one), contain a restrictive covenant that would prevent Drs. Klares and Carrao from rejoining GPS for a period of two years after leaving WMG.