**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1696**

---

WEST VIRGINIA HIGHLANDS CONSERVANCY; SIERRA CLUB,

        Plaintiffs – Appellees,

   and

APPALACHIAN HEADWATERS, INC, Nonparty in whose favor an order has been entered,

        Party-in-Interest,

   v.

ERP ENVIRONMENTAL FUND, INC; RECEIVERSHIP ESTATE OF ERP ENVIRONMENTAL FUND, INC.,

        Defendants – Appellants,

   and

VCLF LAND TRUST, INC, Nonparty against whom an order may be enforced,

        Party-in-Interest,

   and

DOSS SPECIAL RECEIVER, LLC,

        Receiver.

---

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:11-cv-00115)

———————

Argued:  January 26, 2024                          Decided:  April 17, 2024

———————

Before AGEE and RUSHING, Circuit Judges, and KEENAN, Senior Circuit Judge.

———————

Vacated and remanded with instructions by published opinion.  Judge Agee wrote the opinion in which Judge Rushing and Senior Judge Keenan joined.

———————

**ARGUED:**  Christopher M. Hunter, I, JACKSON KELLY PLLC, Charleston, West Virginia, for Appellants.  Elizabeth A. Bower, APPALACHIAN MOUNTAIN ADVOCATES, INC., Lewisburg, West Virginia, for Appellees.  **ON BRIEF:** M. Shane Harvey, JACKSON KELLY PLLC, Charleston, West Virginia, for Appellants.  Derek O. Teaney, APPALACHIAN MOUNTAIN ADVOCATES, INC., Lewisburg, West Virginia, for Appellees.

———————

AGEE, Circuit Judge:

This appeal turns on the proper interpretation of a consent decree negotiated by the parties and previously approved by the district court. Relevant here, that consent decree expressly prohibits the Receivership Estate of ERP Environmental Fund, Inc. (the "Receivership Estate") from conducting surface coal mining at certain sites unless it is necessary for and incidental to reclamation of the site. The question presented is whether that prohibition also applies to a third-party permit transferee of a specific site—the Chestnut Oak Surface Mine in Lincoln County, West Virginia. The district court held that it did, broadly stating that *all* third-party permit transferees are bound by the terms of the consent decree. Because the district court's interpretation cannot be squared with the plain text of the decree, we now vacate and remand with instructions.

I.

The consent decree at issue here originates from a 2011 citizen suit under the Clean Water Act ("CWA"), 33 U.S.C. § 1365, and the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1270. The plaintiffs, the West Virginia Highlands Conservancy and the Sierra Club (collectively, the "Conservation Groups"), alleged that now-defunct Patriot Coal Corporation and three of its subsidiaries (collectively, "Patriot Coal") violated federal environmental laws by discharging excessive amounts of selenium (a toxic pollutant) in connection with its surface mining operations. To resolve the litigation, the parties negotiated a consent decree, which the U.S. District Court for the Southern District of West Virginia approved. Among other things, the decree significantly

3

limited Patriot Coal's surface mining operations in Central Appalachia and required the company to "reclaim" its mining sites—that is, to return the mined land to a useable state.

Patriot Coal later went bankrupt, and ERP Environmental Fund, Inc. ("ERP") was substituted as the defendant, taking on Patriot Coal's obligations under the consent decree. ERP and the Conservation Groups later negotiated a Second Modified Consent Decree, the current version of the consent decree at issue here, which the district court approved in October 2016.[1] The Second Modified Consent Decree, which we refer to as the "Decree," added a new term found in Paragraph 63. That provision, which applies to ERP as the "Substituted Defendant," provides:

> Notwithstanding any other provision of this Second Modified Consent Decree, from the Effective Date of this Second Modified Consent Decree, *Substituted Defendant and its Affiliated Companies* shall not conduct Surface Mining at any location formerly owned or operated by Patriot Coal Corporation or one of Patriot Coal Corporation's subsidiaries, except that Surface Mining necessary and incidental to reclamation. To the extent there is a conflict between this Paragraph 63 and any other Paragraph in Section VIII of this Second Modified Consent Decree, Paragraph 63 shall control.

J.A. 334 (emphasis added).

Like its previous versions, the Decree provides that the district court retains jurisdiction to enforce its terms.

In 2020, ERP ran out of money and ceased all operations. As a result, a West Virginia state court appointed Doss Special Receiver, LLC (the "Receiver") to administer ERP's Receivership Estate. In this role, the Receiver is charged with managing ERP's

---

[1] The consent decree was first modified by Patriot Coal and the Conservation Groups in 2013.

4

business, which includes limited assets and millions of dollars in reclamation liabilities, and with bringing ERP's operations into compliance with its mining permits, the CWA, and the SMCRA.

In 2022, the Receiver sought to finance its administration of the Receivership Estate by authorizing third parties to surface mine at a former Patriot Coal facility—the Buck Fork Surface Mine. The Conservation Groups intervened, arguing that such surface mining would violate Paragraph 63 of the Decree. The district court below agreed, explaining that "[i]n obtaining operator assignments and entering into a reclamation services agreement, [the Receiver] authorized mining at [the] Buck Fork [Surface Mine] beyond that which is 'necessary and incidental to reclamation,'" "in violation of paragraph 63 of the Second Modified Consent Decree." *W. Va. Highlands Conservancy, Inc. v. ERP Env't Fund, Inc.*, Civil Action No. 3:11-0115, 2022 WL 5226026, at *7 (S.D.W. Va. Oct. 5, 2022).

The Receiver did not appeal that ruling. Instead, it sought authorization in West Virginia state court to enter into a permit transfer agreement with a third party in connection with a different former Patriot Coal mine—the Chestnut Oak Surface Mine. In exchange for transferring the relevant mining permits and executing coal mining subleases at the Chestnut Oak Surface Mine, the Receiver would receive cash and a royalty for any coal mined. The third-party permit transferee would in turn fully reclaim the site so long as it could also remove coal in the process to offset the remediation costs. According to the Receiver, this arrangement would be in the Receivership Estate's best interest because it lacks the resources and ability to reclaim the site and because the transaction would not only discharge reclamation liabilities at the Chestnut Oak Surface Mine but also offset

5

reclamation costs at other ERP sites. The West Virginia state court granted authorization for the permit transfer agreement, but in doing so, it specifically ruled that such authorization should not be construed to modify or otherwise affect the terms and conditions of the Decree.

The Conservation Groups notified the Receiver of their position that such a permit transfer agreement would similarly violate Paragraph 63 of the Decree. The Receiver responded that third parties accepting transfer of the Chestnut Oak Surface Mine permits would not be bound by the Decree. At an impasse, the parties filed cross-motions before the district court to enforce the Decree.

The district court agreed with the Conservation Groups and issued an opinion finding that the "Decree's restrictions on surface mining, as laid out in Paragraph 63, are binding upon any third-party permit transferee." *W. Va. Highlands Conservancy, Inc. v. ERP Env't Fund, Inc.*, Civil Action No. 3:11-0115, 2023 WL 2330427, at *7 (S.D.W. Va. Mar. 2, 2023). In doing so, the court relied in part on Paragraph 24 of the Decree, which states that "[t]he provisions of this Second Modified Consent Decree apply to and are binding . . . upon Substituted Defendant and any of its respective *successors and/or assigns*." J.A. 298 (emphasis added). In the court's view, state and federal surface mining laws, under which the Decree's terms generally are to be construed, "indicate that a third-party permit transferee would constitute at least a 'successor'" and thus would be bound by the Decree, including Paragraph 63. *W. Va. Highlands Conservancy, Inc.*, 2023 WL 2330427, at *4. The court drew further support for its holding from Paragraph 25, one

6

sentence of which provides: "In any event, all transferees . . . shall be bound by the terms of this Second Modified Consent Decree, consistent with applicable law." J.A. 299.

However, the district court deferred disposition "as to the question of whether proposed surface mining at Chestnut Oak is necessary and incidental to reclamation, pending further briefing." *W. Va. Highlands Conservancy, Inc.*, 2023 WL 2330427, at *7.

The Receiver subsequently stipulated that "the mining proposed by the third-party transferee would not meet the [district court's] interpretation of 'necessary and incidental' to reclamation," J.A. 526, and so requested that the court enter a final order resolving the cross-motions. Consequently, the district court issued an order granting the Conservation Groups' motion to enforce the Decree and denying the Receiver's competing motion. *W. Va. Highlands Conservancy, Inc. v. ERP Env't Fund, Inc.*, Civil Action No. 3:11-0115, 2023 WL 4351534, at *2 (S.D.W. Va. May 26, 2023).

The Receiver timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

"This Court reviews the interpretation of a negotiated order—here, a consent decree—de novo." *United States v. S. Coal Corp.*, 64 F.4th 509, 514 (4th Cir. 2023).[2]

---

[2] We note that some of our cases have suggested that review of a district court's interpretation of a consent decree should involve some measure of deference. *See, e.g.*, *In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 202 (4th Cir. 2010). But since our interpretation of the Decree would be the same regardless, "we need not determine whether our plenary review incorporates some measure of deference." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 462 n.3 (4th Cir. 2020).

As the Supreme Court has long made clear, "[c]onsent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Thus, consent decrees "cannot be said to have a purpose"; they merely reflect the agreement negotiated by adverse parties. *Id.* In that sense, a consent decree is a like a contract: its scope "must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id.* For that reason, a consent decree's interpretation is governed by "traditional rules of contract interpretation, and the district court's authority is thus constrained by the language of the decree." *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 832 n.6 (4th Cir. 2005). We draw those traditional rules of contract interpretation from the law of the state in which the consent decree was entered—here, West Virginia. *See Collins v. Thompson*, 8 F.3d 657, 659 (9th Cir. 1993) ("When interpreting the terms of a consent decree, the court applies general contract principles using the law of the state where the agreement was made.").

## III.

The central issue in this appeal is whether Paragraph 63's prohibition on surface mining beyond that which is "necessary and incidental to reclamation" would apply to a third-party permit transferee (unrelated to ERP) of the Chestnut Oak Surface Mine.

We begin with the text of Paragraph 63, which we restate below:

Notwithstanding any other provision of this Second Modified Consent Decree, from the Effective Date of this Second Modified Consent Decree, *Substituted Defendant and its Affiliated Companies* shall not conduct Surface

8

> Mining at any location formerly owned or operated by Patriot Coal Corporation or one of Patriot Coal Corporation's subsidiaries, except that Surface Mining necessary and incidental to reclamation. To the extent there is a conflict between this Paragraph 63 and any other Paragraph in Section VIII of this Second Modified Consent Decree, Paragraph 63 shall control.

J.A. 334 (emphasis added).

By its plain terms, Paragraph 63 applies only to "Substituted Defendant and its Affiliated Companies." J.A. 334. The Decree defines "Substituted Defendant" specifically as "ERP Environmental Fund, Inc." J.A. 303. And it defines "Affiliated Company" as "any business organization or entity, regardless of form, directly or indirectly controlling, controlled by, or under common control with ERP Environmental Fund, Inc." J.A. 299.

There has been no suggestion by either party that an unrelated third-party permit transferee of the Chestnut Oak Surface Mine would satisfy either the term "Substituted Defendant" or the term "Affiliated Company." To prevail, therefore, the Conservation Groups must identify another provision of the Decree that unambiguously extends Paragraph 63's prohibition to such a transferee. They cite two: Paragraph 24 and Paragraph 25. We consider these provisions in turn.

### A.

In relevant part, Paragraph 24 provides that "[t]he provisions of this Second Modified Consent Decree apply to and are binding . . . upon Substituted Defendant and any of its respective successors and/or assigns." J.A. 298.

9

The Conservation Groups argue, and the district court found, that any third-party permit transferee would constitute a "successor" and so would be bound by the terms of the Decree, including Paragraph 63.[3] We disagree.

To begin, the Decree does not define the term "successor." But it does specify that terms "that are defined in the CWA, SMCRA or in regulations issued pursuant thereto shall have the meanings assigned to them therein." J.A. 299. So we look to "the CWA, SMCRA or in regulations issued pursuant thereto" and ask whether any of those authorities define the term "successor" and thus supply the meaning for that term in the Decree. J.A. 299.

The answer to that question is clearly no: nowhere in the CWA, SMCRA, or implementing regulations is the term "successor" defined.

The Conservation Groups don't dispute this fact. Instead, they point to federal and state surface mining regulations promulgated under the SMCRA that define the term "successor *in interest*." And in their view, that's close enough. To put a finer point on it, they contend that "[b]ecause federal and state surface mining regulations use 'successor in interest' and 'successor' interchangeably, it is of no import that the regulations define 'successor in interest' but not 'successor.'" Response Br. 22.

---

[3] The Conservation Groups also argue on appeal that a third-party permit transferee would separately constitute an "assign" under Paragraph 24. But they did not raise this argument below, so we decline to consider it here. *See Agra, Gill & Duffus, Inc. v. Benson,* 920 F.2d 1173, 1176 (4th Cir. 1990) ("We will not accept on appeal theories that were not raised in the district court except under unusual circumstances that would result in a miscarriage of justice."). And even if they had, it seems highly unlikely that an unrelated third-party permit transferee would constitute an "assignee" for reasons similar to those discussed below involving a "successor."

As defined in the relevant regulations, "successor in interest" means "any person who succeeds to rights granted under a permit, by transfer, assignment, or sale of those rights." 30 C.F.R. § 701.5; *accord* W. Va. Code R. § 38-2-2.122 (providing materially identical definition).[4] Applying *that* definition to the term "successor" in Paragraph 24 of the Decree, the Conservation Groups argue that a third-party permit transferee of the Chestnut Oak Surface Mine would constitute a "successor" and thus would be bound by Paragraph 63's surface mining prohibition. The district court took the same view.

That approach, however, contravenes the plain language of the Decree. Under the agreement's express text, only those terms used in the Decree that are explicitly "defined in the CWA, SMCRA or in regulations issued pursuant thereto shall have the meanings assigned to them therein." J.A. at 299. And the term "successor"—the term actually used in Paragraph 24—is *not* defined in any of those authorities, so there is no specialized meaning to "assign[]" to it. J.A. 299. Nor is there any other basis in the Decree or those regulations for assigning the meaning of the defined term "successor in interest" to the undefined term "successor."[5]

---

[4] These regulations' definition of "successor in interest" is generally consistent with the ordinary meaning of that term. *See Successor in interest*, Black's Law Dictionary (11th ed. 2019) ("Someone who follows another in ownership or control of property.").

[5] Some of the relevant federal and state surface mining regulations could arguably be construed in some places to use the term "successor" as a shorthand for "successor in interest." *See, e.g.*, 30 C.F.R. § 774.17(d); W. Va. Code R. § 38-2-3.25.a.5. But there is nothing in the CWA, SMCRA, or related regulations that explicitly equates "successor" to a "successor in interest." The salient fact is that only the term "successor in interest" is expressly defined in those regulations and the term "successor"—the term that ultimately matters—is not.

Of course, the parties were free to use the term "successor in interest" in Paragraph 24. But they didn't. Instead, they chose "successor," and we must respect that choice. Indeed, "[o]ur task is not to rewrite the terms of [the Decree] between the parties; instead, we are to enforce it as written." *Fraternal Ord. of Police, Lodge No. 69 v. City of Fairmont*, 468 S.E.2d 712, 716 (W. Va. 1996).

Accordingly, we look to the "plain and ordinary meaning" of the term "successor," *Bass v. Coltelli-Rose*, 536 S.E.2d 494, 497 (W. Va. 2000) (citation omitted), mindful of the context in which the term appears, *see Chesapeake Appalachia, L.L.C. v. Hickman*, 781 S.E.2d 198, 213 (W. Va. 2015) (stating that contract terms "are to be read in their context").

When dealing with corporations like ERP, the term "successor" typically means "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." *Successor*, Black's Law Dictionary (11th ed. 2019).[6] So the question becomes whether a third-party permit

---

[6] This definition, we note, is entirely distinct from that of the term "successor in interest," both as defined in the relevant federal and state surface mining regulations and according to its ordinary meaning. As contrasted with the definition of the term "successor in interest," which implicates only a succession to *rights associated with the ownership or control of certain property*, the definition of the term "successor" requires a succession to *the rights and duties of an earlier corporation through amalgamation, consolidation, or other assumption of interests*—like, for example, a corporate merger or stock purchase, *see Amalgamation*, Black's Law Dictionary (11th ed. 2019) ("The act of combining or uniting; consolidation <amalgamation of two small companies to form a new corporation>."). Thus, the term "successor" takes on a different and more limited meaning than the term "successor in interest."

The district court saw it differently. In its view, "a 'successor in interest' requires a greater enmeshment between two corporate entities than a 'successor,' meaning that an entity that is a 'successor in interest' would be a 'successor,' too." *W. Va. Highlands Conservancy, Inc.*, 2023 WL 2330427, at \*5; *cf.* Response Br. 25 n.5 (asserting that "a (Continued)

transferee of the Chestnut Oak Surface Mine would fall within the meaning of that term. We again answer in the negative.

To be sure, a third-party permit transferee obtains the rights in connection with the relevant mining permits.[7] But by obtaining such permit rights, the transferee does not, "through amalgamation, consolidation, or other assumption of interests, [become] vested with the rights and duties of [ERP]." *Id.* Indeed, we agree with the Receiver that the contemplated permit transfer at issue in this case is more akin to an asset purchase—the transferee would be effectively purchasing mining rights for a specific mine. And as we and several other courts have recognized, merely purchasing an asset does not generally render the purchaser a "successor" to the seller. *See, e.g.*, *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992) (stating that "[t]he settled rule is that a corporation which acquires the assets of another corporation does not take the liabilities of the predecessor corporation from which the assets are acquired" except in limited circumstances not present here); *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994) (same); *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1456 (11th Cir. 1985) (same); *Apache Stainless Equip. Corp. v. Infoswitch, Inc.*, No. 18-cv-04879-JMY, 2020 WL 4195275, at *5 (E.D. Penn. July 21, 2020) ("[B]ecause Apache only acquired

---

'successor-in-interest' is a subspecies of a 'successor'"). But that has it backwards. Because a "successor" acquires the rights and liabilities of another corporation, the "successor" relationship involves "a greater enmeshment between two corporate entities," *W. Va. Highlands Conservancy, Inc.*, 2023 WL 2330427, at *5, than does a "successor in interest" relationship, which requires only the acquisition of rights in certain property.

[7] In that respect, a third-party permit transferee could be a successor in interest.

13

certain assets, and did not assume the liabilities of Mepaco, Apache did not succeed or become a successor to Mepaco."); *Gismondi, Paglia, Sherling, M.D. v. Franco*, 206 F. Supp. 2d 597, 600 (S.D.N.Y. 2002) (holding that an asset purchaser did "not fit within the definition of the legal term 'successor'").

Sidestepping the issue, the Conservation Groups argue that "a successor need not assume *all* of its predecessor's assets, rights, and duties"; rather, "an entity can be a successor as to *part* of its predecessor's estate." Response Br. 30 (second emphasis added). To support this assertion, the Conservation Groups note that "Black's Law Dictionary . . . recognizes that there are multiple species of successors, including 'particular successors' 'who succeed to rights and obligations that pertain only to the property conveyed.'" Response Br. 30 (cleaned up). They then point out that any third-party permit transferee of the Chestnut Oak Surface Mine would assume not just all the rights associated with the permits but also all the associated duties, "including [certain] environmental protection obligations." Response Br. 30. As such, the Conservation Groups continue, the transferee would be properly characterized as a "successor," namely, a "particular successor."

This argument fails for the same reason that the Conservation Groups' previous argument fails—it seeks to rewrite the agreement. The Decree uses the term "*successor*," not "particular successor" or any other subgroup of that term. Just as we will not read "successor in interest" in place of "successor," we will not assign a more limited meaning to "successor" absent some indication that the parties intended that result. *See Fraternal Ord. of Police, Lodge No. 69*, 468 S.E.2d at 716.

14

Applying the ordinary meaning of "successor" in this context, it is clear that term does not encompass a third-party permit transferee of the Chestnut Oak Surface Mine by virtue of the permit transfer alone, even if the relevant permits impose certain duties on the transferee that were previously imposed on ERP. That is to say, by simply acquiring discrete mining permits for a particular mine, the transferee does not, "through amalgamation, consolidation, or other assumption of interests, [become] vested with the rights and duties of [ERP]." *Successor*, Black's Law Dictionary (11th ed. 2019). For that reason, we hold that Paragraph 24 would not bind an unrelated third-party permit transferee to Paragraph 63's surface mining prohibition, which, by its express terms, applies only to "Substituted Defendant and its Affiliated Companies." J.A. 334.

B.

We turn next to the second provision that the Conservation Groups cite in support of their claim that a third-party permit transferee would be bound by Paragraph 63's surface mining prohibition: Paragraph 25.

In its entirety, that provision provides:

> Except for those restrictions on Large Scale Surface Mining set forth in Paragraphs 54 through 58 herein, the applicability and duration of which shall be governed solely by the terms of Section VIII, and the restrictions on Surface Mining set forth in Paragraph 63, no transfer of ownership or operation of any Facility shall relieve Substituted Defendant of its obligation to ensure that the terms of this Second Modified Consent Decree are implemented, provided, however that, prior to any transfer, any party desiring to transfer ownership or operation of any Facility shall provide a copy of this Second Modified Consent Decree to the proposed transferee and require the transferee to provide written confirmation to the Court acknowledging the terms of the Second Modified Consent Decree and that the transferee will be bound by those terms. In such event, the transferring party shall no longer be subject to this Decree. There shall be no requirement

15

to provide written confirmation to the Court if the ultimate parent of Substituted Defendant will change as a result of a transaction, but the Substituted Defendant owning or operating the Facility will not change. In any event, all transferees, subsequent owners, and operators shall be bound by the terms of this Second Modified Consent Decree, consistent with applicable law.

J.A. 298–99.

Following the district court's lead, the Conservation Groups focus on the very last sentence of this paragraph: "In any event, *all transferees* . . . shall be bound by the terms of this Second Modified Consent Decree, consistent with applicable law." J.A. 299 (emphasis added). In their view, "all means all." Response Br. 47 (cleaned up); *accord W. Va. Highlands Conservancy, Inc.*, 2023 WL 2330427, at *7 ("[T]he last sentence of paragraph 25 is clear. All transferees, without qualification, are bound by the terms of the Consent Decree so long as it accords with applicable law."). Thus, the argument goes, any third-party permit transferee of the Chestnut Oak Surface Mine would be equally bound by Paragraph 63's surface mining prohibition. Again, we disagree.

The fundamental problem with the interpretation advanced by the Conservation Groups and adopted by the district court is that it reads the final sentence of Paragraph 25 in a vacuum. Contract terms "are not to be construed in a vacuum, but are to be read in their context." *Chesapeake Appalachia, L.L.C.*, 781 S.E.2d at 213. And that context is critical here as it plainly demonstrates that the phrase "all transferees" in the final sentence of Paragraph 25 refers to a specific subset of transferees that had been identified earlier in the paragraph: all transferees of a "*Facility*." J.A. 298 (emphasis added).

16

We need not devote much time to this issue, for even a cursory review of Paragraph 25 illustrates the point.

Start with the first sentence, which comprises two parts. The first part provides that except as to certain surface mining restrictions set out elsewhere in the Decree, "no transfer of ownership or operation of any *Facility* shall relieve Substituted Defendant of its obligation to ensure that the terms of this Second Modified Consent Decree are implemented." J.A. 298 (emphasis added). At the outset, then, Paragraph 25 cabins its terms to a specific context, or more accurately, a specific triggering event: the transferring of ownership or operation of any "Facility."

The second part of the first sentence and the entire second sentence, which collectively provide an exception to the general rule set out in the first part of the first sentence, reinforce Paragraph 25's limited scope:

> provided, however that, prior to any transfer, any party desiring to transfer ownership or operation of any *Facility* shall provide a copy of this Second Modified Consent Decree to the proposed *transferee* and require the *transferee* to provide written confirmation to the Court acknowledging the terms of the Second Modified Consent Decree and that the *transferee* will be bound by those terms. In such event, the *transferring party* shall no longer be subject to this Decree.

J.A. 298–99 (emphases added). Like the first half of the first sentence, the second half begins by identifying a specific context: when "any party desir[es] to transfer ownership or operation of any *Facility*." J.A. 298 (emphasis added). And it is within that specific context that Paragraph 25 first uses the term "transferee"—three times, in fact. Thus, in each of those three instances, the term "transferee" unquestionably refers to a transferee of

17

a "Facility." J.A. 298. Under the same logic, the term "transferring party" in the second full sentence of Paragraph 25 similarly denotes the transferor of a "Facility." J.A. 298.

In keeping with this narrow context, the third sentence of Paragraph 25 also employs the term "Facility": "There shall be no requirement to provide written confirmation to the Court if the ultimate parent of Substituted Defendant will change as a result of a transaction, but the Substituted Defendant owning or operating the *Facility* will not change." J.A. 299 (emphasis added).

Against this clear backdrop, there can be no doubt that the term "transferees" in the fourth and final sentence—"In any event, all *transferees*, subsequent owners, and operators shall be bound by the terms of this Second Modified Consent Decree, consistent with applicable law," J.A. 299 (emphasis added)—likewise refers only to transferees of *Facilities*. To conclude otherwise would be to completely ignore the context by disregarding everything that preceded that final sentence—an indefensible result. *See Antero Res. Corp. v. Directional One Servs. Inc. USA*, 873 S.E.2d 832, 842 (W. Va. 2022) (explaining that a contract must be construed "to give meaning to every word, phrase and clause and also render all its provisions consistent and harmonious" (cleaned up)). It would be odd indeed for a single contract provision to repeatedly and consistently use a term within the confines of a specific context only to jettison those confines in the final sentence.

18

And here, there is simply no indication that the term "transferees" in the last sentence of Paragraph 25 refers to anything other than transferees of Facilities.[8]

Consequently, whether a third-party permit transferee of the Chestnut Oak Surface Mine would be bound by Paragraph 25 depends on whether the Chestnut Oak Surface Mine constitutes a "Facility" under the Decree. It does not.

The Decree defines the term "Facility" as "Covered Outfalls and mining operations subject to the Covered Permits." J.A. 301. The term "Covered Outfalls" is defined as "the discharge points for the Covered Permits as identified in Appendix A to this Second Modified Consent Decree." J.A. 300. And the term "Covered Permits" is defined in relevant part as

> permits that were the subject of this litigation as those permits are now in effect and as they may be amended, modified, or renewed, following the procedures for such amendment, modification, or renewal prescribed by the applicable federal and state statutes and regulations and interpreted by this Court in relevant decisions for the duration of this Second Modified Consent Decree, including: WV/NPDES Permit[9] Nos. WV0099520, WV0093751, WV0096920, WV0096962, WV1014684, WV1017225, WV0099392, WV1016776, WV1020889, and WV1021028.

J.A. 300.

---

[8] What's more, interpreting the phrase "all transferees" in its broadest sense would lead to absurd results as it would encompass not just transferees of all mining permits but also transferees of *any asset*, thus binding them to all the Decree's terms. *See Transferee*, Black's Law Dictionary (11th ed. 2019) ("One to whom a property interest is conveyed"). We do not think the Decree countenances such a result.

[9] A "WV/NPDES permit" means "a West Virginia / National Pollutant Discharge Elimination System permit issued by [the West Virginia Department of Environmental Protection] pursuant to Section 402 of the CWA." J.A. 304.

There's no dispute that the Chestnut Oak Surface Mine WV/NPDES permit number is not among those listed in the definition of "Covered Permits." *See W. Va. Highlands Conservancy, Inc.*, 2023 WL 2330427, at *6 (identifying the WV/NPDES permit number for the Chestnut Oak Surface Mine as "WV1019759"). There's also no dispute that, as a result, the Chestnut Oak Surface Mine is not "subject to [a] Covered Permit[]" and thus does not constitute a "Facility" under the Decree. J.A. 301. It follows, then, that Paragraph 25 of the Decree does not extend Paragraph 63's prohibition on surface mining to a third-party permit transferee of the Chestnut Oak Surface Mine.

\* \* \* \*

In sum, neither Paragraph 24 nor Paragraph 25 would bind a third-party permit transferee of the Chestnut Oak Surface Mine to Paragraph 63's prohibition on surface mining, a prohibition that expressly applies only to ERP and its Affiliated Companies. We have considered the Conservation Groups' remaining arguments, including their assertion that any third-party permit transferee would be separately bound by the Decree under Federal Rule of Civil Procedure 65(d)(2), and find them meritless.

20

IV.

For the reasons given, we vacate the district court's order and remand with instructions to deny the Conservation Groups' motion to enforce the Decree and to grant the Receiver's competing motion, consistent with this opinion.[10]

*VACATED AND REMANDED*
*WITH INSTRUCTIONS*

---

[10] The Receiver's motion requested a ruling both that (1) the Decree does not apply to a third-party permit transferee of the Chestnut Oak Surface Mine, and (2) the mining proposed for that mine was necessary for and incidental to reclamation. Our decision today resolves only the first issue and renders the second issue moot.